IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 3:16-cr-00207-MO-1 |
| v. | OPINION AND ORDER |
| DONALD RAY DURANT III, | |
| Defendant. | |

**MOSMAN, J.,**

Defendant Donald Ray Durant III pleaded guilty to one count of Possession with Intent to Distribute Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii), and one count of Possession with Intent to Distribute Heroin, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(i). J. [63] at 1. On September 7, 2017, the Court sentenced Mr. Durant to ninety months of imprisonment on each count, to be served concurrently, to be followed by five years of supervised release. *Id.* at 2–3. Mr. Durant now moves to vacate or correct his sentence under 28 U.S.C. § 2255 arguing that he was deprived of his Sixth Amendment right to effective assistance of counsel. Am. Mot. [110] at 1. He also lodged a pro se Motion to Reduce Sentence [119], in which he argued that his guideline score was calculated incorrectly. Finally, Mr. Durant moved for a hearing in connection with the motion to vacate or correct his sentence. Mot. [115]. For the reasons stated below, the Amended Motion to Vacate or Correct Sentence

1 – OPINION AND ORDER

Under 28 U.S.C. § 2255 [110], the Motion to Reduce Sentence [119], and the Motion for Hearing [115] are DENIED.

## BACKGROUND

Mr. Durant was arrested after a search of his home uncovered approximately 2 kilograms of methamphetamine, 450 grams of heroin, 85 grams of cocaine, $20,000 in currency, and one 9mm pistol. Am. Presentence Report [62] at ¶¶ 25–31. Plea negotiations began shortly after Mr. Durant's arrest. Mr. Durant was represented by two attorneys prior to sentencing: after a court-appointed attorney represented Mr. Durant at his initial appearance and at a review of detention hearing, Mr. Durant retained his own counsel. Mot. [33]. Although both attorneys were involved in plea negotiations, Mr. Durant bases his arguments for ineffective assistance of counsel on the performance of the attorney he retained. Am. Mot. [110] at 2.

The parties agreed that Mr. Durant would plead to two out of the four counts in the indictment, with a base offense level of 36 due to the quantity of drugs. Resp. [123] at 3. The parties also agreed to guideline score reductions for early disposition, acceptance of responsibility, and substantial assistance. Resp. [123] at 3. A two-level enhancement was added to the guideline score for possession of a dangerous weapon—the pistol that was found in Mr. Durant's apartment. Resp. [123] at 3. As part of the plea agreement, the parties agreed that the government would recommend 121 months of imprisonment, at the low end of the guideline range, and that Defendant could argue for no lower than 84 months of imprisonment. Resp. [123] at 3. Prior to sentencing, Mr. Durant participated in the Presentence Report process, "giving a detailed and poignant account of his upbringing during his interview." Mem. [113] at 4.

At sentencing, Jason Shriver appeared as a witness for Mr. Durant. Mr. Shriver informed the Court that he owned the 9mm pistol recovered from Mr. Durant's apartment—he testified that he had taken it off before falling asleep on Mr. Durant's couch and had forgotten about it. After hearing Mr. Shriver's testimony, the government agreed that the two-level dangerous weapon enhancement could not be proven and reduced its recommended sentence to 100 months of imprisonment. The Court declined to impose the two-level weapon enhancement and imposed a sentence of 90 months, which was below the guideline range. In addition to the guideline adjustments that the parties agreed upon, the Court determined that a variance was warranted due to Mr. Durant's lack of youthful guidance. J. [64] at 3.

## DISCUSSION

Mr. Durant claimed that his counsel was ineffective in four ways: (1) failing to investigate Mr. Shriver's ownership of the pistol, Mr. Durant's background, and Mr. Durant's role in the offense, (2) failing to negotiate a plea offer based on accurate facts, (3) failing to "develop mitigating information concerning Mr. Durant's chaotic and abusive childhood," and (4) failing to argue that Mr. Durant's criminal history was over-represented. Am. Mot. [110] at 2. Mr. Durant also lodged a pro se Motion to Reduce Sentence Under 28 U.S.C. § 2255 [119], in which he argued that his counsel was ineffective for, among other reasons, miscalculating the base offense level. Pitcher Decl. [120] at 2. Mr. Durant argued that the base offense level should have been three points lower than originally calculated (33 rather than 36) and that the base offense level should have been further reduced by two points due to Sentencing Guideline Amendment 782. Pitcher Decl. [120] at 2; Mot. [119] at 5, 17. Mr. Durant requested an evidentiary hearing to address the basis for his motions to vacate or reduce his sentences. Mot. [115].

I.  Ineffective Assistance of Counsel

To prevail on a claim of ineffective assistance of counsel, petitioner must show (1) that counsel's performance was "deficient" and (2) that the deficient performance "prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Failure to satisfy either prong of the *Strickland* test obviates the need to consider the other." *Rios v. Rocha*, 299 F.3d 796, 805 (9th Cir. 2002).

To satisfy the deficiency prong, petitioner must demonstrate that his attorney's actions "were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Furthermore, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* Deficient performance at sentencing can be the basis for an ineffective assistance claim. *See, e.g., Williams v. Taylor*, 529 U.S. 362, 395 (2000).

To satisfy the prejudice prong, petitioner must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.*

A. Failure to Investigate

1. *Ownership of the Pistol*

Mr. Durant's primary argument is that his retained counsel failed to properly investigate several factors relevant to plea negotiation and sentencing. The most significant allegation is that Mr. Durant's attorneys failed to contact Mr. Shriver, who claimed to own the pistol that was originally attributed to Mr. Durant. Mr. Durant alleges that his attorneys received several phone calls from Mr. Shriver during the period when plea negotiations were ongoing but that his

attorneys never sought to remove the dangerous weapon enhancement until the day of sentencing. Mot. [113] at 8. Rather than investigate Mr. Shriver's claim, Mr. Durant alleges that his attorney simply told Mr. Shriver to appear in court for sentencing. *Id.*

I find that Mr. Durant's attorney did not perform deficiently in failing to further investigate the straightforward claim that the pistol belonged to Mr. Durant's friend. As Mr. Durant's attorney stated at sentencing, he had spoken to Mr. Shriver weeks before sentencing. Tr. [76] at 9. Mr. Durant has not identified any information that further investigation would have uncovered. Mr. Durant's main complaint is that his attorney should have investigated sooner and was ineffective in failing to use information about Mr. Shriver's ownership of the pistol to advocate effectively during plea negotiations. But this argument is indistinguishable from Mr. Durant's second theory of ineffective assistance: that his attorney "failed to negotiate a plea offer in keeping with the facts," which is a theory that I reject for the reasons stated below. Am. Mot. [110] at 2. Therefore, I find that Mr. Durant has not demonstrated that his attorney rendered deficient performance in failing to investigate Mr. Shriver's claim that he owned the pistol found in Mr. Durant's apartment.

2. *Mr. Durant's History and Background*

As noted by Mr. Durant's attorney and by the Court at sentencing, Mr. Durant experienced a traumatic childhood. Tr. [76] at 6, 18. The details of Mr. Durant's childhood were also contained in the Presentence Report, which was prepared with Mr. Durant's participation. Mem. [113] at 4. In the present motion, Mr. Durant argued that "an effective attorney would surely have investigated further into the information which came to light concerning Mr. Durant's dysfunctional past." Mem. [113] at 12. Although the Court accounted for Mr. Durant's childhood difficulties by varying downward from the low end of the guidelines

by ten months, Mr. Durant argued that "an effective attorney would have advocated for a larger variance," and would have provided the Court with witness statements and expert opinions on the long-term effects of childhood trauma. *Id.* at 13.

I again find that Mr. Durant's attorney was not deficient in failing to further investigate Mr. Durant's background. The information provided by Mr. Durant that was incorporated into the Presentence Report and presented by his attorney at sentencing required no further investigation. Although Mr. Durant's attorney could have produced more evidence to demonstrate the long-term effects of Mr. Durant's traumatic childhood, the failure to do so does not render his performance deficient. An attorney's performance is not measured against what was possible; the question is whether the attorney's performance fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Therefore, I find that Mr. Durant failed to establish that his counsel was ineffective as a result of not conducting additional investigation of Mr. Durant's background.

3. *Mr. Durant's Role in the Offense*

Mr. Durant argued that his attorney failed to investigate whether some of the drugs found in Mr. Durant's apartment belonged to someone else. Mem. [113] at 16. Mr. Durant had at times claimed that the methamphetamine in his apartment belonged to his cousin. Mem. [113] at 15–16. But Mr. Durant's attorney did argue at sentencing that Mr. Durant "was a relatively small player," who was caught by way of a simple controlled purchase rather than as the result of a complex and prolonged investigation. Tr. [76] 7–8. Because the methamphetamine was found in Mr. Durant's apartment and Mr. Durant claimed to know who had placed it in his apartment, I find that Mr. Durant's attorney did not render a deficient performance by not investigating this claim further.

B. <u>Failure to Negotiate Effectively</u>

As noted above, whether Mr. Durant's attorney adequately investigated the facts of the case is an issue that is distinct from whether his attorney negotiated effectively considering those facts. I find that Mr. Durant has failed to demonstrate that he was prejudiced by any of the supposed deficiencies he has identified. First, Mr. Durant argued that he was prejudiced by his attorney's failure to advocate for dismissal of the weapons enhancement prior to sentencing. Mr. Durant argued that the absence of a weapon enhancement would have resulted in a more favorable plea negotiation. Mem. [113] at 10. As an example, Mr. Durant argued that reducing the government's recommended sentence to reflect the lack of a weapon enhancement might have led the parties to agree that Mr. Durant could argue for a correspondingly lower sentence.[1] Mem. [113] at 10. But, as noted above, Mr. Durant and his attorney were aware that Mr. Shriver claimed possession of the pistol—Mr. Durant and his attorney had ample opportunity to negotiate the terms of the plea agreement in light of this fact prior to sentencing.

Mr. Durant did not receive a sentence enhancement for the pistol found in his apartment. The proposition that he was still prejudiced because the weapons enhancement put him at a disadvantage in plea negotiations is unfounded. The Court considered the downward departures recommended by both parties and arrived at a sentence that was 10 months less than the low end of the guidelines. This sentence was longer than the minimum advocated by Mr. Durant's attorneys; any lower recommendation by Mr. Durant's attorney would not have affected the

---

[1] The parties' plea agreement allowed the government to recommend a 121-month sentence while the defense could advocate for an 84-month sentence. Although the government reduced its recommendation to 100 months after conceding that the weapons enhancement should be removed, the limitation on Mr. Durant's ability to advocate for a shorter sentence was not reduced. However, in Mr. Durant's sentencing memorandum, his attorney incorrectly argued for a sentence of 78 months, a mistake that he corrected at oral argument. Memorandum [59] at 3.

7 – OPINION AND ORDER

Court's sentence. Therefore, I find that Mr. Durant has not demonstrated that he was prejudiced by his attorney's failure to remove the weapons enhancement from the guideline calculation during plea negotiations.

Second, Mr. Durant argued that he was prejudiced by his counsel's failure to negotiate using a guideline calculation that accounted for a "minor role" reduction. Mem. [113] at 15–16. As discussed above, I find no deficient performance in counsel's failure to argue for a reduction due to Mr. Durant's role in the charged crime. Therefore, I also find that he was not prejudiced by his attorney's failure to secure this reduction earlier in the plea negotiation process.

C. Failure to Present Mitigating Information Regarding Mr. Durant's Childhood

As described above, Mr. Durant faults his attorney's failure to further investigate the effects of traumatic childhood. In a related claim, he argued that he was prejudiced by his attorney's failure to present those facts to the Court. Both claims fail for the same reason: details of Mr. Durant's childhood were presented to the Court by Mr. Durant's attorney and were detailed in the Presentence Report. And Mr. Durant received a 10-month downward variance to account for his lack of youthful guidance. No further presentation was required for the Court to understand the impact of Mr. Durant's childhood on his ability to avoid the crime he committed. Because no further details would have affected the Court's sentence, I find that Mr. Durant was not prejudiced by his attorney's failure to present additional facts related to Mr. Durant's traumatic childhood.

D. Failure to Argue that Mr. Durant's Criminal History Was Over-represented

Mr. Durant argued that his attorney was ineffective in failing to argue for a downward departure due to an over-representative criminal history. Due to several convictions for misdemeanors and driving-related offenses, Mr. Durant's criminal history was classified as

Category IV. Mr. Durant does not argue that this classification was incorrect. Instead, he argued that his attorney should have noted that this classification misrepresented Mr. Durant's dangerousness. Mem. [113] at 14. I reject this argument because Mr. Durant's attorney argued that Mr. Durant's previous criminal history was not of a kind with the drug crimes at issue in this case. Tr. [76] at 6–9. And the Court stated that Mr. Durant had "no drug crimes, no gun crimes, no violent crimes. You don't even have a burglary in your past." Tr. [76] at 17. Mr. Durant's attorney argued that Mr. Durant did not have a history of dangerous crimes and the Court accepted this argument, which Mr. Durant acknowledged "likely factored into the Court's decision to vary downward 10 months." Mem. [113] at 14. For this reason, I find that Mr. Durant's attorney did not fail to argue that Mr. Durant's crimes were over-representative of his dangerousness and his performance was therefore not deficient on this point.

II.     Calculation of Guideline Score

Although he is represented by an attorney, Mr. Durant lodged a pro se motion for a reduction in his sentence. While a represented party may only file documents with the Court through counsel, Mr. Durant's attorney requested that the Court address the merits of Mr. Durant's pro se motion due to the difficulty she has had communicating effectively about the claims Mr. Durant raised. *See United States v. Bergman*, 813 F.2d 1027, 1030 (9th Cir. 1987) ("A criminal defendant does not have an absolute right to both self-representation and the assistance of counsel. The decision to allow such hybrid representation is within the sound discretion of the judge.") (citations omitted); Pitcher Decl. [120] at 2. The government addresses Mr. Durant's pro se claims, stating that "it may be beneficial to rule on the merits of this claim to avoid future filings." Resp. [123] at 10. I address the merits of Mr. Durant's motion for reduction of sentence, but only insofar as the pro se arguments are presented by Mr. Durant's

9 – OPINION AND ORDER

counsel. Mr. Durant's counsel stated that the Mr. Durant believes the base offense level should have been 33 rather than 36. Pitcher Decl. [120] at 2. She also stated that Mr. Durant believes that his base offense level should have been reduced to 31 under Sentencing Guideline Amendment 782. Pitcher Decl. [120] at 2.

The base offense level calculated in the Presentence Report was based on the amount of methamphetamine and heroin Mr. Durant admitted to possessing. *See* U.S. Sentencing Guideline Manual § 2D1.1(c)(2) (U.S. Sentencing Comm'n 2016). Mr. Durant's motion provides no reason why that calculation was incorrect. As noted by the government, Sentencing Guideline Amendment 782, which was effective as of November 1, 2014, was incorporated into the 2016 Guidelines that were used to calculate Mr. Durant's guideline score. Resp. [123] at 10–11. For these reasons I find no error in the calculation of the offense level used in this case.

III.     Evidentiary Hearing

A defendant presenting a §2255 motion is entitled to an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *United States v. Leonti*, 326 F.3d 1111, 1116 (9th Cir. 2003) (quoting *United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir. 1984)). The Ninth Circuit "[has] characterized this standard as requiring an evidentiary hearing where 'the movant has made specific factual allegations that, if true, state a claim on which relief could be granted.'" *Id.* (quoting *Schaflander*, 743 F.3d at 717). Accordingly, a hearing must be granted "unless the movant's allegations, when viewed against the record, do not state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal." *Schaflander*, 743 F.3d at 717. "Merely conclusory statements in a § 2255 motion are not enough to require a hearing." *United*

*States v. Johnson*, 988 F.2d 941, 945 (9th Cir. 1993) (quoting *United States v. Hearst*, 638 F.2d 1190, 1194 (9th Cir. 1980)).

I find that no evidentiary hearing is warranted in this case. Even accepting Mr. Durant's factual allegations as true, he has not stated a claim upon which relief could be granted. *Leonti*, 326 F.3d at 1116. Mr. Durant's claim that he was denied the effective assistance of counsel, in violation of the Sixth Amendment, is contradicted by the transcript of his sentencing hearing, his sentencing memorandum, the Presentence Report, and the result of his attorney's advocacy—a sentence that was ten months less than the low range of sentencing guidelines. Therefore, Mr. Durant's motion for an evidentiary hearing is DENIED.

## CONCLUSION

For the foregoing reasons, I DENY Defendant's Amended Motion to Vacate or Correct Sentence Under 28 U.S.C. § 2255 [110] and Defendant's pro se Motion to Reduce Sentence [119]. I also DENY Defendant's Motion for Hearing [115]. Because Defendant has not made a substantial showing of the denial of a constitutional right, I decline to issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

DATED this ___ day of September, 2019.

MICHAEL W. MOSMAN
Chief United States District Judge